**RAMADA INNS, INC. (a Delaware corporation), Hotel Ramada of Nevada (a Nevada corporation), Adamar of New Jersey, Inc. (a New Jersey corporation) and Ramada Hotel Operating Company (a Delaware corporation), Plaintiffs,**

**v.**

**James A. DRINKHALL, John Andrews and Dow Jones & Company (a Delaware corporation), Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 3, 1985.
Decided: Jan. 23, 1985.

---

**11.** See note 3, supra.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, Wilmington, and Thomas C. Green (argued), of Sharp, Green & Lankford, Washington, D.C., for plaintiffs.

Edmund N. Carpenter, II, of Richards, Layton & Finger, Wilmington, Gregory L. Diskant (argued) and Susan E. Weiner, Esq., of Patterson, Belknap, Webb & Tyler, New York City, for defendants.

TAYLOR, Judge.

By Order dated April 17, 1984 this Court directed that reports prepared for plaintiffs by Philip R. Manuel dated May 11, 1981, June 24, 1981 and July 8, 1981, which defendant Dow Jones & Company, Inc. [Dow Jones] sought to have plaintiffs produce, be produced to Dow Jones' counsel for the purpose of permitting Dow Jones' counsel to respond to plaintiffs' motion for a protective order but provided that the reports would not be disclosed to defendants or to any other person until the Court made a further order deciding the motion. Subsequent to that production the parties have submitted briefs dealing with the motion and oral argument has been heard.

By way of background, this is a libel action growing out of two articles published in the Wall Street Journal on August 17 and 20, 1981 concerning the casino operations of plaintiffs [Ramada] in Las Vegas and Atlantic City. The first article reported that a private investigator, Philip Manuel [Manuel], hired by Ramada had found thefts by casino employees, uncollectable markers from gamblers, and financial and management problems. The second article reported Ramada's denial of various allegations of the first article and set forth Ramada's contention that the first article was

not substantiated by the Manuel report. Ramada did employ Manuel to investigate and report to top management certain phases of Ramada's operations. The reports which are involved here are a preliminary report dated May 11, 1981, a special report dated June 24, 1981, and a final report dated July 8, 1981. These are the reports which the articles had reference to.

## I

Ramada contends that the reports are protected as work product and defendant must show substantial or compelling need, or extraordinary circumstance calling for this production, because the reports were prepared in anticipation of litigation, which in fact was filed shortly after the investigation was started.

■ It is not necessary to analyze the many cases which have considered the concept of work product. The concept of work product is designed to prevent disclosure of the results of investigation or mental processes and strategies which have been developed for use in litigation.

> In general, the doctrine protects memoranda, recorded mental impressions, synopses of witness statements, drafts of documents, etc., prepared by an attorney "with an eye to litigation," unless substantial good cause can be shown for its production.

*Hercules, Inc. v. Exxon Corp.*, D.Del., 434 F.Supp. 136 (1977). Materials assembled during routine investigations by counsel are not protected as work product. *Zucker v. Sable*, S.D.N.Y., 72 F.R.D. 1 (1975); *United States v. Maryland Shipbuilding and Drydock Co.*, D.Md., 51 F.R.D. 159 (1970).

The affidavit which Ramada has submitted shows that the reports which Ramada seeks to have protected were prepared at the direction of the Senior Vice-President and Chief Financial Officer of Ramada and coordinated by Ramada's corporate counsel and outside counsel in anticipation of a suit against Ramada relating to Ramada's purchase of the assets of Hotel Conquistador, Inc. and its operation of Tropicana Hotel. That suit[1] was filed less than two months after the reports were ordered. Thus, the reports were prepared in anticipation of other litigation and were completed before the writing of the articles which are the basis of this libel suit. This suit was not anticipated at the initiation or completion of the reports.

■ The issue of whether to extend work product protection beyond the litigation which was anticipated during the preparation of document was considered by the United States District Court for Delaware in *Hercules, Inc. v. Exxon Corp.*, supra. After noting that some cases had permitted discovery freely in a different case, Judge Wright in *Hercules* accepted a "sounder view" that protection would be extended to a different case "where the two cases are closely related in parties and subject matter," citing *Burlington Industries v. Exxon Corporation*, D.Md., 65 F.R.D. 26 (1974); *Duplan Corp. v. Deering Milliken, Inc.*, D.S.C., 397 F.Supp. 1146 (1975); *Republic Gear Co. v. Borg-Warner Corp.*, 2nd Cir., 381 F.2d 551 (1967); 8 Wright & Miller, *Federal Practice and Procedure* § 2024.

■ The *Hercules* test does not protect these reports because neither identity of parties nor identity of litigation subject exists between this suit and *Productions & Leasing, Ltd. v. Hotel Conquistador, Inc., et al.*, supra. The focus of this suit is alleged libelous Wall Street Journal articles. The focus of *Productions & Leasing, Ltd.* apparently is Ramada's acquisition of the Tropicana Casino. The captions of the cases show lack of identity of parties.

---

**1.** *Productions & Leasing, Ltd. v. Hotel Conquistador, Inc., Hotel Ramada of Nevada, Ramada Inns, Inc., Deil O. Gustafson, Howard Johnson, Mr. William Isbell, The Nevada Gaming Commission (and members), The Nevada Gaming Control Board (and members),* and *Does I through XX,* D.Nev., Civil Action No. CV–LV81–79.

■ It will be noted that even if the reports were within the provisions of Civil Rule 26(b)(3) they would not necessarily be unavailable for pre-trial discovery because disclosure may be required where the "benefit to resolution of the suit outweighs the potential injury to the party from whom discovery is sought". *Loctite Corp. v. Fel-Pro, Inc.*, 7th Cir., 667 F.2d 577, 582 (1981).

Defendants contend that regardless of the protection afforded work product, plaintiffs have waived such protection by virtue of the issues which they have raised by this suit. The complaint alleges that the Wall Street Journal articles were libelous by stating or implying (1) that plaintiffs were incompetent to manage, operate and construct hotel casinos, (2) that many Tropicana employees were associated with the mob, (3) that plaintiffs were involved in, condoned or were incapable of stopping casino thefts at Las Vegas, (4) that the audit by Philip R. Manuel apparently found that $20 million of casino revenue had been stolen and an additional $11 million in gambling markers was apparently collectable, and (5) that plaintiffs had created new figures or had changed or covered up the original findings of the Manuel audit. The complaint alleges that these statements and implications are untrue.

■ A party by his actions in the litigation may create a situation which will be held to be a waiver of the protection which normally applies to work product. *United States v. Noble*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Applying this concept, a defendant who called an investigator to impeach credibility of prosecution witnesses was held to have waived work product protection with respect to the investigator's report. Ibid. Similar waiver has been found to apply where the issue was lack of good faith of an insurance company to require disclosure of the insurer's claim file, *Bourget v. Government Employees Insurance Company*, D.Conn., 48 F.R.D. 29 (1969), where reliance on advice of counsel was a defense, *Donovan v. Fitzsimmons*, N.D.Ill., 90 F.R.D. 583

(1981), *Garfinkle v. Arcata National Corp.*, S.D.N.Y., 64 F.R.D. 688 (1974), and where intent of the party was at the heart of the case, *Pitney-Bowes, Inc. v. Mestre*, S.D.Fla., 86 F.R.D. 444 (1980).

■ Ramada would limit discovery of the reports to twenty pages relating to uncollectable gambling debts. This ignores the allegations of the complaint which deal with specific portions of the reports and totally overlooks the charge that the articles purporting to rely on the reports imply general mismanagement or inability to manage. Additionally, the complaint alleges that the later article implied that Ramada had changed or covered up the findings of one of the Manuel reports and thereby libelled Ramada. It is clear that the Manuel reports are so intertwined with the articles and hence with this libel action that the case cannot be pursued at the pre-trial stage without reference to the entire reports. Accordingly, I find that any requirement of substantial need for the entire reports exists here.

II

The second consideration is whether or to what extent the Court should isolate these reports from general public scrutiny. Superior Court Civil Rule 26(c) provides for granting of a protective order "for good cause shown" in order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden of expense".

Initially, Ramada contended that the protective order should bar access to the reports by anyone other than defendant's counsel who are involved in the defense of this case, at least in the absence of a showing of substantial need and that no such need has been shown here. Ramada also characterized the reports as "confidential research and commercial information" and "sensitive information". It also refers to the reports as containing material which facilitated sensitive personnel decisions.

Although Ramada's position has undergone modification during the briefing, it

appears that its present position is that material should not be released for publication by defendant until and only to the extent that the Court has determined that the particular material is admissible at trial and that names of individuals mentioned in the reports not be published. The Court has discussed in an earlier portion of this opinion the relevancy of the Manuel reports to the issues raised by the complaint and has concluded that at the present posture of the case it would appear that the complaint may require comparison of the subject Wall Street Journal articles with the entire Manuel reports.

Defendants point out that trials are historically open to the public, citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 2829 n. 17, 65 L.Ed.2d 973 (1980); *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n. 15, 99 S.Ct. 2898, 2908 n. 15, 61 L.Ed.2d 608 (1979); *In re Oliver*, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed.2d 682 (1948); *Doe v. Stegal*, 5th Cir., 653 F.2d 180, 185 (1981); *United States v. Cianfrani*, 3d Cir., 573 F.2d 835, 847 (1978); *Globe Newspapers Co. v. Superior Court for Norfolk*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982); *Newman v. Graddick*, 11th Cir., 696 F.2d 796, 802 (1983); *Joy v. North*, 2d Cir., 692 F.2d 880, 893 (1982), *cert. denied sub nom. Citytrust v. Joy*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). On the basis that the discovery process is but a prelude to the trial, defendants argue that the same policy should govern.

The various aspects of the issue of judicial restriction upon the openness of pre-trial discovery in a State court proceeding was dealt with by the United States Supreme Court in *Seattle Times Company v. Rhinehart*, —— U.S. ——, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). At the outset of that opinion, Mr. Justice Powell noted that even a litigant has no First Amendment right of access to information made available only for purposes of trial, citing *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). Further, the Court stated that a civil litigant owes his pre-trial right of access to information to the discovery processes of the trial court. Noting that much of the pre-trial discovery may be at most tangentially related to the litigation and may not be admissible as evidence at trial, the Court found that the retention of power in the trial court to prevent abuse resulting in damage to reputation and loss of privacy was a legitimate exercise of State power. However, it noted that in upholding a limitation upon the right to disseminate information the limitation must be no greater than is necessary or essential to the particular governmental interest involved. Finally, it found that the restraint in that case, which prevented the public disclosure of the membership and sources of financial support of a religious group called Aquarian Foundation, of which defendant was the spiritual leader, was a reasonable and justified restraint.

■ Denial of access to litigation material must be approached from the premise that court restraint should not be imposed unless strong justification exists for such action. Thus, the party seeking such restraint must carry a substantial burden. This approach runs counter to the position which Ramada takes here, which appears to be that secrecy as to everyone except the parties and their attorneys should prevail during the pre-trial stages of the case. That position is contrary to the express terms of Civil Rule 26(c) which reflects a philosophy of full disclosure, 4 *Moore's Federal Practice* § 26.67, p. 26–427, and which contemplates that where secrecy is to be imposed it should be applied only upon showing of good cause and upon such terms as the Court would direct.

The objective of the protective order to avoid "annoyance, embarrassment, oppression, or undue expenses" must be construed to apply where those conditions exceed conditions which are inherent in any civil litigation. Every suit involves a limited degree of each of those conditions and it must be inferred that the protective order

based on those factors was not intended to apply to every suit. If the draftsman had intended otherwise the rules would have provided a general restraint on dissemination of information obtained by pretrial discovery. Further indication that the protective order was intended to be restricted to the exceptional case is the requirement of showing of "good cause" for such protection.

 The Court should apply a "balancing test" giving consideration to the magnitude and imminence of harm to the litigants supporting secrecy against the interests of the government and public in disclosure of matters relevant to matters before the courts. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, E.D.Pa., 529 F.Supp. 866 (1981). Even where some restraint is warranted, that restraint should be so restricted to impose no greater restraint than is necessary to afford the protection which is warranted under this test. Ibid. Where information is relevant to an issue raised by the pleadings, protection should be applied only upon a showing that the annoyance, embarrassment, or oppression which a party would endure from pretrial disclosure of the information would exceed that which an ordinary litigant would endure in the course of litigation.

 A claim for such relief must be supported by particularization demonstrating that such relief is warranted. *Waelde v. Merck*, E.D.Mich., 94 F.R.D. 27 (1981). 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2035, p. 265. The mere fact that a case has achieved notoriety which may attract attention to information is not sufficient ground for protection. *United States v. Hooker Chemical & Plastics Corp.*, W.D.N.Y., 90 F.R.D. 421 (1981).

Ramada relies heavily on the decision of the United States Court of Appeals for the District of Columbia Circuit in *Tavoulareas v. The Washington Post Company*, D.C. Cir., 724 F.2d 1010 (1984) in which a protective order was granted. *Tavoulareas* was a libel suit by the president of Mobil Oil Corporation and his son against the Wash-

ington Post. The thrust of the libel were assertions that the son of Mobil's president had an ownership interest in Atlas Maritime Company with which Mobil did extensive business and the inference that this relationship was the result of nepotism. At the pre-trial stage Washington Post sought discovery of many documents pertaining to Mobil's business operations. Mobil intervened in the libel suit and obtained a protective order restricting use of the document information to the immediate suit and barring use of the information by reporters.

The ground relied upon by the Court in *Tavoulareas* was the harm which disclosure could bring to Mobil's ongoing competitive position. This was established by two affidavits by a vice president of Mobil showing that disclosure would undermine Mobil's ongoing relationship with Saudi Arabia, that it would reveal strategy, negotiations and long-range planning of Mobil, would interfere with its ongoing partnership relationship with foreign oil producers and would harm Mobil's competitive position.

Many of the matters dealt with in the Manuel reports relate to conditions which Ramada contends it has corrected. Those matters presumably do not affect or reflect ongoing operations and they would not be protected under *Tavoulareas*. The affidavit of Thomas E. Martin, senior vice president and chief financial officer of Ramada, indicates that revelation of information concerning security controls and financial procedures at the Las Vegas Tropicana casino would be detrimental to Ramada's operations. On the assumption that that allegation is intended to mean that disclosure of that information would affect Ramada's ongoing operations, such information would fall within the reasoning of *Tavoulareas*.

Subsequent to the argument in this matter, Ramada, by letter, has called to the Court's attention the decision of the United States District Court for the Southern District of New York in *Westmoreland v.*

*CBS Inc.,* S.D.N.Y., 82 Civ. 7913 (PNL) Opinion Dec. 13, 1984 (Leval, J.) which involved the trial admissibility of a report prepared by a senior executive producer of CBS News. *Westmoreland* is a libel suit which claims that General Westmoreland was libelled by a CBS documentary broadcast. The report which is the subject of the decision was prepared after the content of the broadcast had been challenged by General Westmoreland and TV Guide had criticized the broadcast. The decision refused to admit the report in its entirety and required judicial scrutiny of each portion of the report which plaintiff would seek to admit.

The significance of *Westmoreland* is minimal to this case because the report involved there was an after-the-fact appraisal of the alleged libel. By contrast, in this case the Manuel reports were prepared prior to the alleged libel, were mentioned in the allegedly libellous articles and are reputed to be the source (accurately or inaccurately) of the substance of the articles.

 I conclude that the general restraint sought by Ramada is not called for. It is recognized that in a limited number of cases the volume of documents is so great that scrutiny of individual documents is not feasible, and in such cases summary treatment may be justified. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* supra. The volume of material sought to be protected here is not of such magnitude.

 While it appears that a great deal covered by the reports does not qualify for the protection which Ramada seeks, some portions warrant protection. (1) Insofar as the reports attribute improprieties to individuals who are not parties to this suit, those individuals are entitled to have their identities protected by appropriate deletions from the reports. (2) Recognizing that these reports may be entitled to protection as work product for purposes of other ongoing litigation and that the release of quoted portions of the reports might make available to parties in that litigation material which would not be oth-

erwise discoverable in that litigation, anyone having access to these reports should be prevented from quoting any portion of the reports, but paraphrasing would be permissible.

This decision noted above that much of the content of the reports deals with past events which no longer are recurring, but that Ramada contends that certain portions relate to Ramada's current policies concerning security contracts and financial procedures. Ramada should have the opportunity to point out by appropriate affidavits those portions of the reports which are within the latter category and present its arguments that disclosure of this information would hurt Ramada's ongoing business. Defendants should, of course, have an opportunity to oppose Ramada's position. Until this subject has been decided, the restraint which has been previously imposed shall remain in effect as to the documents and affidavits and briefs in connection therewith. When the Court has determined what, if any, specific portions of the reports are to be protected under this standard, the remainder of the reports will be released from the present restraint except as stated in the preceding paragraph. The attorneys shall submit a schedule for submissions contemplated by this paragraph.

The protection to be afforded under this decision does not prevent defendants from disclosing any information which it has obtained from a source other than through the discovery process in this case even though the information obtained from an outside source coincides with that obtained by discovery in this case.

The protective order previously entered shall remain in effect until further order is entered.