# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BLANCHE NEWBORN,<br>Individually and as Executrix of the<br>Estate of Lindsay Hurley Ballas,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTIANA PSYCHIATRIC<br>SERVICES, P.A. and LEATRICE S.<br>ALBERA, as Executrix of the<br>Estate of Jorge A. Pereira-Ogan, M.D.<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. N16C-05-047 VLM |

## MEMORANDUM OPINION AND ORDER

Submitted: November 3, 2016
Decided: November 30, 2016

*Upon Consideration of Defendants' and State/DPR's Motion(s) to Quash
Subpoena and Motion for Protective Order.*

## GRANTED in part, DENIED in part.

Tiffany M. Shrenk, Esquire. MacElree Harvey, Ltd. of Centreville, Delaware. *Attorney for the Plaintiff.*

Lorenza A. Wolhar, Esquire, and Bradley J. Goewert, Esquire. Marshall Dennehey Warner Coleman & Goggin of Wilmington, Delaware. *Attorneys for the Defendants.*

Stuart B. Drowos, Esquire. Delaware Department of Justice. *Attorney for Deputy Attorney General Stacey X. Stewart.*

Patricia A. Davis, Esquire. Delaware Department of Justice. *Attorney for Delaware Division of Professional Regulation.*

**MEDINILLA, J.**

## INTRODUCTION

This is a medical malpractice action where the Estate of Lindsay Hurley Ballas ("Plaintiff") alleges that Jorge A. Pereira-Ogan, M.D. ("Dr. Ogan"), provided negligent psychiatric care to Ms. Ballas that caused her to commit suicide in August 2014. Plaintiff brings this action against the Estate of Dr. Ogan and Defendant Christiana Psychiatric Services, P.A. ("Defendants"). During discovery, Plaintiff's Estate served two subpoenas *duces tecum* on two non-parties to the underlying civil action: Deputy Attorney General Stacey X. Stewart ("State" or "DAG Stewart") and Division of Professional Regulation ("DPR") Investigator Anthony Hernandez. The subpoenas sought the production of documents related to DPR's investigation into the late Dr. Ogan's medical treatment and alleged relationship with Plaintiff's decedent. Defendants now move to quash the subpoenas served on both non-parties on the basis of the immunity provision found in Delaware's statutory peer review privilege.[1] Both non-parties also move to quash the subpoenas, raising governmental privilege and the work product doctrine.[2] After consideration of the parties' briefings and oral arguments, for the reasons stated below, Defendants' and State/DPR's Motion(s) to Quash the

---

[1] 24 *Del. C.* § 1768(b).

[2] *See* D.R.E. 508 (governmental privilege); DEL. SUPER. CT. CIV. R. 26(b)(3) (work product doctrine).

Subpoenas and Motion for Protective Order are **GRANTED in part, DENIED in part**.

## FACTUAL AND PROCEDURAL HISTORY

### *Factual Background*

Ms. Ballas began receiving psychiatric treatment with Dr. Ogan in 1991 in Wilmington, Delaware.[3] Before joining Defendant Christiana Psychiatric Services, P.A., and during some relevant time periods when psychiatric treatment was rendered, Dr. Ogan initially operated an individual practice in Wilmington.[4] While under his care, Dr. Ogan prescribed Xanax and Prozac to Ms. Ballas for anxiety and depression.[5] Dr. Ogan later diagnosed Ms. Ballas with major depression, dysthymic disorder, and dependent personality disorder.[6]

Their formal medical relationship ended in 1993 when Ms. Ballas and Dr. Ogan began a romantic relationship.[7] Although formally discharged as a patient, Dr. Ogan is alleged to have continued to prescribe medication to Ms. Ballas from

---

[3] Complaint at ¶ 10.

[4] *See id.* at ¶ 9.

[5] *See id.* at ¶ 10.

[6] *See id.* at ¶ 11.

[7] *See id.* at ¶ 12-14.

1993 to 2014.[8]  Moreover, Plaintiff alleges that Dr. Ogan never maintained any medical records of his ongoing treatment of Ms. Ballas, nor did he conduct appropriate medical evaluations when he prescribed these medications.[9]  Their romantic relationship ended after only several months; yet, they remained friends until 2014.[10]

In the summer of 2014, Ms. Ballas purportedly explained to Dr. Ogan that her Prozac was ineffective at treating her underlying psychiatric conditions.[11]  He allegedly provided her samples of a new medication, Brintellix, as a replacement for her Prozac.[12]  Plaintiff claims that the Brintellix caused Ms. Ballas to suffer physical, psychological, and emotional side effects.[13]  She committed suicide on August 21, 2014.[14]

---

[8] *See id.* at ¶ 12-15.

[9] *See id.* at ¶ 15.

[10] *See id.* at ¶ 16-17.

[11] *See id.* at ¶ 20.

[12] *See id.* at ¶ 20-22.

[13] *See id.* at ¶ 21.

[14] *See id.* at ¶ 23.

After the Office of the Chief Medical Examiner ("OCME")[15] investigated the circumstances of Ms. Ballas' death, a report was filed directly with DPR regarding alleged administrative, civil, criminal and/or ethical violations related to Dr. Ogan's relationship and medical care of Ms. Ballas. DPR Investigator Hernandez was assigned to investigate and report his findings to DPR for consideration of any further proceedings against Dr. Ogan.

Investigator Hernandez reportedly interviewed employees of Defendant Christiana Psychiatric Services, P.A., requested records from Dr. Ogan and his prior practice group, and interviewed Dr. Ogan. The investigative file and accompanying documents were then forwarded to the Delaware Department of Justice's ("DOJ") Affirmative Litigation Unit, headed by DAG Stewart, for further consideration.

The DOJ's review of the DPR file led to the filing of two formal complaints ("DOJ Complaints") with the Board of Medical Licensure and Discipline ("Board"). However, no further action was taken by DPR, the Board, or the DOJ related to Dr. Ogan because he passed away on August 16, 2016. The DOJ Complaints were dismissed on the basis of prosecutorial discretion.

---

[15] See 29 Del. C. § 4701 (effective July 4, 2014). The Office of the Chief Medical Examiner was abolished in 2014 and is now the "Division of Forensic Science" within the Department of Safety and Homeland Security. For purposes here, it will be referred to as OCME.

### Procedural Background

Plaintiff's Estate filed this medical malpractice action on May 4, 2016. At the time of filing, Plaintiff's counsel had already received a copy of the DOJ Complaints from the State. Plaintiff became aware of additional information not provided by the State, including a letter sent from Dr. Ogan to the OCME regarding Ms. Ballas' death and statements made by Dr. Ogan during the DPR investigation.

Accordingly, Plaintiff issued two subpoenas *duces tecum* to DAG Stewart and Investigator Hernandez on September 28, 2016.[16] The subpoenas requested "complete and accurate copies of any and all records including but not limited to: all notes; statements; medical records; and other tangible things regarding the investigation of [Dr. Ogan], conducted by or on behalf of [DPR]."[17]

The Deputy Director of DPR produced "all responsive records" on CD in a letter dated October 4, 2016. The letter did not outline any asserted privileges or make reference to any withheld documents.[18] On October 12, 2016, counsel for

---

[16] The subpoenas were later filed as "Records Only Depositions" on October 11, 2016. *See* D.I. #28.

[17] D.I. #28. Except for substitution of their respective names, the subpoena to Investigator Hernandez is identical to the subpoena served on DAG Stewart.

[18] This letter is attached as Exhibit C to Plaintiff's Opposition to Defendants' Motion.

DAG Stewart (i.e., the State)—without knowledge of DPR's disclosure—moved to quash the subpoena.[19]

The next day, on October 13, 2016, Defendants filed the present Motion to Quash under the peer review privilege established under 24 *Del. C.* § 1768.[20] They further sought a protective order to bar the use of the disclosed records they claim were inadvertently disclosed by the Deputy Director of DPR.[21]

Plaintiff responded in opposition to Defendants' Motion to Quash and Motion for Protective Order and the State/DPR's Motion to Quash on October 26, 2016. All parties argued their respective positions on the Motions at oral argument on November 1, 2016. This is the Court's ruling on the Motions after considering the parties' respective filings, oral arguments, and the record.

## CONTENTION OF THE PARTIES

Defendants contend that DPR is protected as a "peer review organization or committee" under 24 *Del. C.* § 1768(a), and its results would be categorically privileged pursuant to § 1768(b). Defendants further argue that no exception to this statutory privilege is applicable to the present subpoenas.

---

[19] D.I. #30.

[20] D.I. #32.

[21] The State joined the Motion for Protective Order on the bases stated in the initial Motion to Quash and for the reasons stated in Defendants' Motion.

7

The non-parties, State and DPR, jointly move to quash the subpoena and for protective order on different grounds.[22] Principally, both non-parties argue that governmental privilege applies.[23] The State and DPR rely on *Beckett v. Trice*,[24] D.R.E. 508, and a recent Superior Court ruling in *White v. Ribbons & Bows Daycare, Inc.*[25] to argue that Plaintiff has failed to meet her burden to overcome the applicable governmental privilege in this case. Additionally, the State and DPR argue that the investigative record is protected as work product made in anticipation of litigation.

Alternatively, the non-parties posit that, though they do not maintain that DPR is a "peer review committee or organization" immunized under § 1768, the privileged nature of some of the information found in DPR's investigative file invokes policy considerations under § 1768. Thus, they argue that the privileged nature of the investigative files may trigger the applicability of the peer preview privilege.

---

[22] DPR did not appear at oral argument nor respond independently. It joined the State's Motions after the Court, at oral argument, directed counsel for DPR to file a statement of their position. *See* D.I. #40.

[23] Notably, both non-parties concede that the DOJ Complaints were publicly disclosed and are not privileged under either a common law privilege or § 1768.

[24] 1994 WL 319171 (Del. Super. June 6, 1994).

[25] 2016 WL 4394726 (Del. Super. Aug. 12, 2016) (Order).

8

Plaintiff maintains that the provisions of 24 *Del. C.* § 1768 are inapplicable to the subpoenaed records and should be disclosed. Plaintiff focuses on DPR's enabling statute, 29 *Del. C.* § 8735, and argues that, where DPR is mandated to conduct investigations, issue a final report, and list evidence forming the basis of DPR's investigative findings,[26] its role falls outside the scope of the immunity provisions under § 1768. Even if the Court determined that DPR is a "peer review committee or organization" for purposes of § 1768(a), Plaintiff argues that, because the investigative file was not used exclusively by DPR when it was forwarded to the DOJ for eventual prosecution, the peer review privilege under § 1768(b) remains inapplicable.

With respect to governmental privilege and the work product doctrine, Plaintiff contends that both are qualified privileges. Accordingly, both are subject to exceptions where the interest of the party seeking discovery outweighs the application of the asserted privilege. In this case, where both Dr. Ogan and Ms. Ballas are deceased and unavailable for deposition, Plaintiff argues that her interest in the production of the DPR file is manifest. Further, Plaintiff contends that Dr. Ogan's death undermines any asserted privacy interest in the investigative file. Finally, Plaintiff notes that the underlying action alleges Dr. Ogan negligently failed to maintain records of the medical treatment rendered to Ms. Ballas after she

---

[26] 29 *Del. C.* § 8735.

9

was discharged as a patient. Since these records are non-existent, Plaintiff alleges that she has a greater interest in the investigative file than she would have had if Dr. Ogan had documented Ms. Ballas' care.

The parties' and non-parties' final contentions deal with the issue of waiver. During oral arguments only, Plaintiff argued that DPR waived any privilege when it disclosed the records in its letter dated October 4, 2016. The non-parties responded that there was no waiver where the actions of DPR were inadvertent and performed while the State was drafting its Motion to Quash the Subpoena. Defendants argue that the non-parties do not have a right to waive any privilege associated with the records because the peer review privilege applies, thus, the privilege is only Dr. Ogan's to waive. Having now considered the respective positions, the matter is ripe for review.

## STANDARD OF REVIEW

Where Defendants and the non-parties have submitted joint Motions, the Court considers Rules 26 and 45 accordingly. Rule 26 governs discovery between the parties to the action.[27] It permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery. . . ."[28]

---

[27] DEL. SUPER. CT. CIV. R. 26.

[28] Rule 26(b)(1).

10

Thus, the scope of discovery is broad, as relevancy—not admissibility—is the crucial test in determining what documents are discoverable between the parties.[29] Rule 45 governs motions to quash subpoenas served on non-parties to the civil action.[30] Pursuant to subsection (3)(A), "On a timely motion, the Court shall quash or modify the subpoena if it . . . (ii) requires disclosure of privileged or other protected matter and no exception or waiver applies. . . ."[31]

Under either Rule, where a party or non-party asserts the requested documents are privileged, the general rule is that the defending party carries the burden of establishing the applicability of the privilege.[32] If the defending party meets this burden, the burden then shifts to the requesting party. To overcome this privilege, the requesting party must show good cause for the documents' production.[33] A showing of good cause must reveal the documents' materiality to a claim or defense, and the party's inability to obtain the information from another,

[29] *Cf. Brett v. Berkowitz,* 706 A.2d 509, 513 (Del. 1998) (discussing scope of discovery where privilege is raised to defend against production)

[30] DEL. SUPER. CT. CIV. R. 45.

[31] Rule 45(c)(3)(A). *See also Humes v. Charles H. W. Farms, Inc.,* 2006 WL 2242715, at *1 (Del. Super. July 14, 2006).

[32] *See White v. Ribbons & Bows Daycare, Inc.,* 2016 WL 4394726, at *2 (Del. Super. Aug. 12, 2016) (Order) (quoting *Commw. Land Title Ins. Co. v. Funk,* 2015 WL 3863192, at *2 (Del. Super. June 17, 2015)).

[33] *See id.* (citing *Brady v. Suh,* 2009 WL 6312181, at *2 (Del. Super. July 8, 2009)).

non-privileged source.[34] This determination is made on a case-by-case basis.[35] A party to the action may also move for a protective order under Rule 26(c). The Court shall issue any order—upon a showing of good cause—that "justice requires to protect a party or person," including directing the other party not to inquire into certain matters or use privileged material.[36]

## DISCUSSION

### *Inadvertent Waiver of Privilege*

As a threshold matter, the Court finds that DPR did not waive any privilege when it inadvertently disclosed the subpoenaed records on October 4, 2016. Inadvertent waiver of privilege is addressed under D.R.E. 510.[37] Where an inadvertent disclosure is made, the party asserting the privilege must show: (1) the disclosure was inadvertent; (2) the holder of the privilege "took reasonable steps to prevent disclosure;" and (3) the holder promptly sought to rectify the error.[38] The only issue in this case is whether the holder of the privilege took reasonable steps

---

[34] *See id.* (citing *Beckett v. Trice*, 1994 WL 319171, at *4 (Del. Super. June 6, 1994)).

[35] *See id.*

[36] Rule 26(c). *See also Ramada Inns, Inc. v. Drinkhall*, 490 A.2d 593, 598-99 (Del. Super. 1985) (analyzing "balancing test" for competing interests inherent in motion for protective order).

[37] D.R.E. 510.

[38] D.R.E. 510(c).

12

to prevent disclosure notwithstanding the disclosure of the records in a letter absent any claim of privilege.[39]

The Court finds that DPR and the State took reasonable steps to protect from disclosure of the privileged information. While the Deputy Director's letter fails to assert any privilege in the enclosed records, it is clear that this was reportedly an oversight and a reasonable one at that. Given the many State departments and requests the State receives for records, inadvertent disclosures are expected to occur. However, the swift response—by filing a Motion to Quash—ameliorated the initial error and manifests its effort to rectify the inadvertence of the Deputy Director's disclosure. Since no waiver of privilege occurred, the Court next turns to the substantive arguments regarding privilege.

### *Delaware's Peer Review Privilege*

Delaware's peer review privilege is codified in 24 *Del. C.* § 1768. Section 1768(a), entitled "Immunity of boards of review; confidentiality of review board record," provides that the peer review privilege applies to the following entities and persons:

> (a) The [Board] and the Medical Society of Delaware, their members, and the members of any committees appointed by the Board or Society; the members of any committee appointed by a certified health maintenance

---

[39] Defendants contend that the statutory peer review privilege is for Dr. Ogan to waive. However, since the Court finds below that the peer review privilege does not apply, this contention is moot.

13

organization; members of hospital and osteopathic medical society committees; members of a professional standards review organization established under federal law; and **members of other peer review committees or organizations whose function is the review of medical records, medical care, and physicians' work, with a view to the quality of care** and utilization of hospital or nursing home facilities, home visits, and office visits. . .[40]

Defendants contend that DPR, acting as the investigatory "arm" of the Board, is a "peer review committee[] or organization[] whose function is the review of medical records . . . with a view to the quality of care and utilization of [medical facilities]."[41] The argument being that DPR's function, when acting as the mandatory investigator of the Board,[42] brings DPR into the purview of subsection (a) and, therefore, DPR oscillates in and out of the peer review privilege.[43]

Defendants' argument carries some intuitive logic, but Defendants fail to cite to any authority to support this interpretation. Initially, the Court notes that DPR is defined in the general provisions of Delaware' Medical Practice Act, but

---

[40] § 1768(a).

[41] *Id.*

[42] *See* 29 *Del. C.* § 8735(a)(10).

[43] The two non-parties do not join Defendants on this position, instead arguing that the policy considerations apparent in § 1768 support their principal argument regarding governmental privilege and work product.

14

DPR is not mentioned in the text of § 1768(a).[44] Case law on the provision, furthermore, fails to adequately address the present issue on the applicability of § 1768(a) to DPR. To consider Defendants' contention, this Court relies, in part, on *Office of Chief Medical Examiner v. Dover Behavioral Health System,*[45] where the Supreme Court held that the Office of Health Facilities Licensing and Certification (OHFLC) was a "peer review committee or organization" within the statutory language of § 1768(a).

In this case, DPR received the initial complaint regarding Dr. Ogan without the involvement of the Board or other "peer review committees or organizations." As such, DPR functioned as a general investigatory body and its results were forwarded to the DOJ upon completion of the investigation. The matter never went before a peer group of any kind and it never went to the Board.

While there may be some situations where the peer review privilege applies to DPR investigative files, such as when DPR acts as a mandatory investigative "arm" of the Board similar in some respect to the OHFLC in *Dover Behavioral Health*, here DPR did not act as a "peer review committee or organization" within the purview of the peer review privilege. It is apparent, therefore, that DPR's role

---

[44] *Compare* 24 *Del. C.* § 1768(a) (silent as to DPR's inclusion in peer review privilege) *with* 24 *Del. C.* § 1702(4) ("'Division' means the Division of Professional Regulation.").

[45] 976 A.2d 160 (Del. 2009).

15

in this case did not invoke the application of the peer review privilege found in more traditional contexts.[46] Thus, in this case, this Court finds that DPR's investigative file is not subject to Delaware's peer review privilege. The Court next turns to the arguments of the State and DPR related to governmental privilege and the work product doctrine.

### Governmental Privilege

The existence of a governmental privilege is recognized in D.R.E. 508.[47] On several occasions, this Court has interpreted the scope of this privilege in the context of a civil litigant's asserted need to obtain information contained in a state agency's investigative file used in preparation of possible criminal prosecution of a relevant party or non-party to the civil action.[48] At its essence, this privilege prohibits a civil litigant from requiring the DOJ to "disclose facts coming to [its] knowledge for the use of the state in its prosecution of the accused."[49] Such

---

[46] Since the Court finds that DPR was not a "peer review committee or organization" for purposes of this case, the Court does not need to address the argument addressed to § 1768(b), i.e., whether DPR's investigative file was used "exclusively" for purposes of the policy reasons inherent in the statutory peer review privilege.

[47] D.R.E. 508.

[48] *See, e.g.,* *White v. Ribbons & Bows Daycare, Inc.,* 2016 WL 4394726, at *2 (Del. Super. Aug. 12, 2016) (Order); *Griffin v. Sigma Alpha Mu Fraternity,* 2011 WL 2120064 (Del. Super. Apr. 26, 2011); *Brady v. Suh,* 2009 WL 6312181 (Del. Super. July 8, 2009); *Williams v. Alexander,* 1999 WL 743082 (Del. Super. June 29, 1999); *Beckett v. Trice,* 1994 WL 319171 (Del. Super. June 6, 1994).

[49] *Beckett,* 1994 WL 319171, at *3 (quoting *State v. Brown,* 36 A. 458, 463 (Del. Oyer and Term. 1896)).

16

information is protected on public policy grounds; to be "regarded as secrets of the State, or matters the disclosure of which would be prejudicial to the public interest."[50]

The governmental privilege is not absolute, however.[51] If the civil litigant shows that her interest in the privileged information outweighs the State's interest in maintaining the information's secrecy, then the privilege is defeated. Thus, the Court must engage in a balancing test, pitting the interest of the Plaintiff against the State's interest.[52]

Delaware law recognizes that the State holds a strong interest in maintaining the secrecy of confidential material obtained in the furtherance of a criminal investigation.[53] The strength of this interest manifests itself in two ways. First, there is a presumption that the State's file is privileged absent good cause shown.[54] Second, the burden is placed on the civil litigant to persuade the Court that the

---

[50] *Williams*, 1999 WL 743082, at *1 (quoting *Brown*, 36 A. at 463-64).

[51] *See, e.g.*, *Brady*, 2009 WL 6312181, at *3 (citing *Alexander*, 1999 WL 743082, at *1) ("the privilege is not absolute, but qualified").

[52] *See id. See also Alexander*, 1999 WL 743082, at *2.

[53] *See Alexander*, 1999 WL 743082, at *2.

[54] *See Brady*, 2009 WL 6312181, at *3 (citing *Guy v. Judicial Nominating Comm'n*, 659 A.2d 777, 785 (Del. Super. 1995)).

17

litigant's interest in the information outweighs this presumption.[55] Accordingly, it is Plaintiff's burden to prove the materiality of the information and an inability to obtain the information from another source, in addition to a burden of proving her interest outweighs the State's interest.

The State and DPR direct the Court to analogize the present situation to the situation in *White v. Ribbons & Bows Daycare, Inc.* where the Court denied defendant's motion to compel the production of material contained in the State's related homicide investigation. Reviewing the cases of *Williams v. Alexander*[56] and *Griffin v. Sigma Alpha Mu*,[57] the Court distinguished those cases on the basis that, "the criminal investigation remains open and involves possible murder charges for the death of an infant who had been in the care of the Parties to this civil litigation. . . ."[58] Finding it "improvident" to "open the doors to its criminal file at th[at] juncture," the Court denied defendant's motion to compel the State's criminal file on the basis that the defendant failed to overcome the broad presumption against disclosure under Delaware's governmental privilege.[59]

---

[55] *White v. Ribbons & Bows Daycare. Inc.*, 2016 WL 4394726, at *3 (Del. Super. Aug. 12, 2016) (Order).

[56] 1999 WL 743082 (Del. Super. June 29, 1999).

[57] 2011 WL 2120064 (Del. Super. Apr. 26, 2011).

[58] *Ribbons & Bows*, 2016 WL 4394726, at *3.

[59] *Id.*

This case stands on somewhat different footing. First, Defendant's decedent, Dr. Ogan, is no longer subject to criminal or administrative prosecution. In *Ribbons & Bows*, the homicide investigation was ongoing, albeit several years removed from the date of the incident.[60] Second, the present case involves overlays of medical care not implicated in *Ribbons & Bows*. As discussed above, the role of DPR—in some cases as an investigative "arm" of the Board—adds an additional policy consideration: the chilling effect of disclosing confidential statements made by medical professionals during DPR's investigation into other medical professionals. In this case, DPR was not functioning in this manner.

This Court finds the decisions in *Williams* and *Griffin* more persuasive regarding the issue of governmental privilege in this case.[61] The *Williams* Court ordered the disclosure of "all material relating to the factual investigation of the [alleged arson], including reports regarding scientific and physical evidence and any conclusions drawn therefrom by State officials," but barred production of "information relating to interviews with non-parties."[62] Additionally, the Court

---

[60] *See id.* at *1.

[61] *Griffin v. Sigma Alpha Mu*, 2011 WL 2120064 (Del. Super. Apr. 26, 2011) (requiring partial disclosure of records used in criminal investigation into plaintiffs' decedent's death notwithstanding asserted government privilege); *Williams v. Alexander*, 1999 WL 743082 (Del. Super. June 29, 1999) (requiring partial disclosure of arson investigation file where State argued governmental privilege).

[62] *Williams*, 1999 WL 742082 at *2.

19

required the disclosure of statements made by parties to the litigation.[63] Finally, the Court ordered a protective order over the documents to protect from public disclosure of the compelled documents throughout the litigation.[64]

Similarly, the Court in *Griffin* ordered the production of records used in the criminal investigation into the circumstances of plaintiffs' decedent's death due to alcohol poisoning during a fraternity initiation "ritual."[65] The *Griffin* Court conducted an *in camera* review of the subpoenaed records and concluded that plaintiffs' need for the records outweighed the asserted governmental privilege. The Court followed *Williams* and ordered the production of the subpoenaed records pursuant to a protective order ensuring the confidentiality of the records throughout the litigation.[66]

The present case involves largely similar policy issues the Court in *Williams*, *Griffin*, and *Ribbons & Bows* addressed in the context of governmental privilege. One significant factor in this case, however, is that both Ms. Ballas and Dr. Ogan are deceased. In this context, Dr. Ogan's statements to DPR and the OCME take on an added importance, as Plaintiff will be unable to depose Dr. Ogan in the

---

[63] *See id.* ("As I see it, the Defendant should know what is in her own statement.").

[64] *See id.* (requiring Attorney General's Office to draft and submit a protective order within ten days).

[65] *See generally Griffin*, 2011 WL 2120064.

[66] *See id.* at *2-4.

20

prosecution of her case. Moreover, Dr. Ogan's alleged failure to maintain any records of his prescriptions to Ms. Ballas leaves a significant lacuna of relevant medical records from which Plaintiff may litigate her claims of negligence.

Conversely, the State's case against Dr. Ogan, now defunct due to his death, lessens the State's and DPR's argument on the privileged nature of the investigative file. Contrasted to the ongoing—though suspended—criminal case in *Ribbons & Bows*, the present case simply lacks the same concerns about future prosecution of a relevant party found in the latter case.

As in *Williams*, Plaintiff has shown that she will be prejudiced absent disclosure of some of the information contained in the investigative file. Plaintiff has shown a need for the disclosure of the statements Dr. Ogan made to the OCME and to Investigator Hernandez. Moreover, Plaintiff has demonstrated that she cannot obtain the statements elsewhere. Therefore, both non-parties are directed to produce any statements by Dr. Ogan contained in the file that have not already been disclosed to Plaintiff's counsel. However, as in *Griffin*, any notes or thought processes of DPR or the DOJ are privileged and shall not be disclosed or used in any manner. No statements by third-parties shall be disclosed pursuant to the Court's holding in *Williams*. Furthermore, the investigative results, conclusions, or findings of DPR or the State, other than that which is found in the DOJ Complaints, continue to remain protected under governmental privilege and shall

21

not be disclosed or used in the underlying action. A protective order shall apply to the disclosed information to protect it from publication.[67]

## CONCLUSION

Plaintiff has shown good cause for why she must be permitted access to Dr. Ogan's statements made to the State and DPR in connection with the investigation into his medical care of Ms. Ballas. However, any statements made by third-parties are privileged and shall not be disclosed. Furthermore, any investigative results, conclusions, or findings found in the file shall not be disclosed, nor shall they be used in this case as they remain privileged under governmental privilege. The DOJ Complaints previously disclosed to Plaintiff's counsel are not privileged

---

[67] The Court finds that the work product argument raised by both non-parties is sufficiently addressed in the Court's ruling on governmental privilege. Rule 26(b)(3) codifies the common law work product doctrine. *See* DEL. SUPER. CT. CIV. R. 26(b)(3). Rule 26(b)(3) states in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Rule 26(b)(3). This doctrine generally "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 261 (Del. 1995) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Assuming that the work product doctrine applies to the investigative file in the present case, the doctrine largely overlaps with the more protective governmental privilege addressed above. Therefore, the Court need not analyze the applicability of the work product doctrine other than note that the governmental privilege provides a stronger basis for non-disclosure of the relevant records than does the work product doctrine.

22

and are not barred from use in the underlying action. A protective order shall apply to the disclosed records for the period of this litigation.

Though unaddressed by the parties in their respective filings, but as noted by this Court during oral arguments, any of Ms. Ballas' *psychiatric/medical* records obtained by the State from Dr. Ogan's private practice are not privileged under governmental privilege and, therefore, shall be disclosed to Plaintiff's counsel without limitation.

Accordingly, Defendants' and State/DPR's Motion(s) to Quash Subpoena and for Protective Order are **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc:     Prothonotary
cc:     All Counsel of Record (via e-filing)