# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE APPRAISAL OF COLUMBIA PIPELINE GROUP, INC.

) Cons. C.A. No. 12736-VCL
)
)

## MEMORANDUM OPINION

Date Submitted: June 22, 2018
Date Decided: August 30, 2018

Stephen E. Jenkins, Andrew D. Cordo, Marie M. Degnan, ASHBY & GEDDES, P.A., Wilmington, Delaware; Marcus E. Montejo, Kevin H. Davenport, John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Mark Lebovitch, Jeroen van Kwawegen, Christopher J. Orrico, John Vielandi, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York; *Attorneys for Petitioners*.

Martin S. Lessner, James M. Yoch, Jr., Paul J. Loughman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Brian J. Massengill, Linda X. Shi, MAYER BROWN LLP, Chicago, Illinois; *Attorneys for Respondent*.

**LASTER, V.C.**

As contemplated by Court of Chancery Rule 5.1, the petitioners in this appraisal proceeding filed notices challenging the confidential treatment of certain filings (the "Challenged Materials"). In response to the notices, respondent Columbia Pipeline Group, Inc. ("Columbia") moves for continued confidential treatment. Significantly, Columbia does not argue that the Challenged Materials were properly designated as confidential. Instead, Columbia contends that the petitioners are seeking improperly to make information public so it can be used in other litigation. According to Columbia, this effort violates a provision in a confidentiality order entered in this action, which states:

> Discovery Material shall be used solely for purposes of this Litigation and shall not be used for any other purpose, including . . . any other litigation or proceeding; provided, however, that the foregoing shall not apply to Discovery Material that is or becomes part of the public record.[1]

Columbia regards the petitioners' efforts as so facially improper that it believes the court should not even consider whether the Challenged Materials warranted confidential treatment in the first place.

The Challenged Materials are judicial records. Under the First Amendment of the United States Constitution and as a matter of common law, the public has a presumptive right of access to judicial records.[2] "The public's right of access to judicial records has

---

[1] Dkt. 59, ¶ 9.

[2] *See Gannett Co. v. State*, 571 A.2d 735, 742 (Del. 1989) (considering whether First Amendment right of access requires disclosure of jurors' names); *C v. C.*, 320 A.2d 717, 723 (Del. 1974) (discussing the common law right of access to judicial records).

1

been characterized as 'fundamental to a democratic state[.]'"[3] The right of access enables the public to "judge the product of the courts in a given case."[4] This, in turn, "helps ensure 'quality, honesty and respect for our legal system.'"[5] Consequently, "all court proceedings are presumptively open to the public."[6] "Denial of access to litigation material must be approached from the premise that [a judicial] restraint [on access] should not be imposed unless strong justification exists for such action."[7]

Court of Chancery Rule 5.1 "reflects the Court of Chancery's commitment to these principles."[8] It states that, "[e]xcept as otherwise provided" in Rule 5.1, "proceedings in a civil action are a matter of public record."[9] This language "makes clear that most information *presented to the Court* should be made available to the public."[10]

---

[3] *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (alteration in original) (quoting *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)).

[4] *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004).

[5] *Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *1 (Del. Ch. Mar. 27, 2013) (quoting *Cont'l Ill.*, 732 F.2d at 1308).

[6] *In re Nat'l City Corp. S'holders Litig.*, 2009 WL 1653536, at *1 (Del. Ch. Jun. 5, 2009) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980)).

[7] *Ramada Inns, Inc. v. Drinkhall*, 490 A.2d 593, 598 (Del. Super. 1985).

[8] *Horres*, 2013 WL 1223605, at *2.

[9] Ct. Ch. R. 5.1(a).

[10] *Sequoia Presidential Yacht Gp. LLC. v. FE P'rs LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013).

Rule 5.1(b)(3) provides that a "party or person seeking to obtain or maintain Confidential Treatment always bears the burden of establishing good cause for Confidential Treatment." Rule 5.1(b)(2) defines "good cause" as follows:

> For purposes of this Rule, "good cause" for Confidential Treatment shall exist only if the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause. Examples of categories of information that may qualify as Confidential Information include trade secrets; sensitive proprietary information; sensitive financial, business, or personnel information; sensitive personal information such as medical records; and personally identifying information such as social security numbers, financial account numbers, and the names of minor children.

In determining whether good cause has been established, the court must "balanc[e] . . . the public interest against the harm that public disclosure might entail with respect to sensitive nonpublic information."[11] The court will not order confidential treatment "merely because disclosure has the potential for collateral economic consequences."[12] Instead, the harm must be "particularized."[13]

In this case, Columbia does not assert, much less demonstrate, that any of the Challenged Material is confidential within the meaning of Rule 5.1. That is the end of the matter.

---

[11] *Reid v. Siniscalchi*, 2014 WL 6486589, at *1 (Del. Ch. Nov. 20, 2014).

[12] *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *5 (Del. Ch. Oct. 14, 2013).

[13] *Sequoia*, 2013 WL 3724946, at *2.

3

Columbia's contention that the petitioners are violating the use restriction glosses over the fact that the use restriction does not apply to information that is public or which becomes public. A judicial record is a presumptively public filing. Under Rule 5.1, unless the party seeking confidential treatment meets the standard for confidential treatment, the information becomes public. Here, Columbia has failed to meet the standard for confidential treatment, so the use restriction does not apply. Columbia puts the cart before the horse by asking the court to evaluate whether the use restriction has been breached before determining whether it applies.

The exception to the use restriction for information that is public or which becomes public also addresses Columbia's assertion that it relied on the protections of the confidentiality order. Those protections included an exception for information that becomes public. Use of the information in compliance with that exception does not infringe upon Columbia's reliance interest.[14]

Rather than confronting the requirements of Rule 5.1 and the confidentiality order, Columbia resorts to a policy-based argument. Columbia perceives injustice in the fact that

---

[14] It is also not clear to me that Columbia can claim justifiable reliance on the confidentiality order for material that never warranted confidential treatment in the first place. It is true that the definition of Discovery Material in the order is not limited to confidential information, but a party would not have grounds to object to producing non-confidential information pending the entry of a confidentiality order. A party would have to produce non-confidential information when requested in compliance with Court of Chancery Rule 34. To my mind, this fact weakens Columbia's reliance interest. Regardless, because of the exception for materials that become public, this decision need not consider the implications of this issue.

the petitioners in this appraisal proceeding have been able to obtain broad discovery into the sale process for Columbia, and Columbia perceives further injustice in the possibility that discovery material which becomes public because of its status as a judicial record might be used in other litigation. But Columbia's decision to put its sale process at issue in this proceeding is a choice that Columbia made. "Section 262(h) neither dictates nor even contemplates that the Court of Chancery should consider the transactional market price of the underlying company."[15] No one forced Columbia to rely on the deal price as the principal evidence of fair value. Having chosen to advance that valuation argument, Columbia opened the door to discovery into its sale process.

There is also no injustice in the public having access to information in judicial filings and potentially using the information to identify and pursue potential wrongdoing. As Justice Brandeis famously observed, "Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[16] The Delaware Supreme Court has recognized that one benefit of the appraisal remedy is the ability of a petitioner to uncover fraud and other wrongdoing that might not otherwise be identified, because "only shareholders pursuing discovery during an appraisal action are likely to acquire the relevant information needed to pursue a fraud action if such information exists."[17] In part because the high court

---

[15] *Golden Telecom, Inc. v. Glob. GT LP*, 11 A.3d 214, 217 (Del. 2010).

[16] Louis D. Brandeis, *What Publicity Can Do*, Harper's Weekly (New York), December 20, 1913, at 10.

[17] *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1189 (Del. 1988).

viewed appraisal actions as serving this important public policy, the justices held that a stockholder who had demanded appraisal and pursued an appraisal proceeding could subsequently file and simultaneously litigate a breach of fiduciary action based on information uncovered during discovery in the appraisal proceeding.[18]

In my view, these public policy interests counsel against a special exception to Rule 5.1 under which non-confidential information in judicial records in an appraisal proceeding would remain confidential, simply to mitigate the risk of additional litigation for the respondent. Columbia, by contrast, wishes to keep all of its information secret and out of the public view, regardless of whether the information deserves confidential treatment in the first place, and regardless of what the information shows. By taking this approach, Columbia seeks to transform a confidentiality order that this court entered to protect truly confidential information into a non-disclosure agreement that it can wield to escape accountability for potential wrongdoing. The public right of access trumps this attempt.

In an effort to support its contrary approach, Columbia cites *Andra v. Blount*.[19] That decision did not involve a challenge to a confidentiality designation or arguments about the use of discovery in an appraisal proceeding. The plaintiff, Andra, had originally filed a lawsuit challenging a two-step, controlling-stockholder squeeze-out merger. She moved for expedited proceedings and sought a preliminary injunction on the theory that the first-

---

[18] *Id.*

[19] 772 A.2d 183 (Del. Ch. 2000) (Strine, V.C.).

step tender offer contained false and misleading disclosures, but then withdrew her injunction application and allowed the transaction to close without challenge. She declined to tender into the first-step tender offer, but other stockholders did, and the controller acquired sufficient shares in the tender offer to complete the second step via a short-form merger. Andra then perfected her appraisal rights and also resumed pursuit of her breach of fiduciary duty action. On the facts presented, Chief Justice Strine, writing as Vice Chancellor, held that Andra lacked standing to pursue a claim for breach of the duty of disclosure, because she had opted for appraisal and therefore could not have been injured by any alleged disclosure violations.[20] Columbia cites this aspect of the decision, inferring a judicial policy against follow-on litigation based on discovery in an appraisal proceeding. But the Chief Justice only barred Andra's disclosure claim. He held that Andra could pursue a claim for unfair dealing,[21] and he noted that if Andra had chosen to "actually press[ ] her preliminary injunction motion, perhaps it would be good policy to let her continue to litigate her disclosure-based claims, even though she decided not to tender."[22] Rather than suggesting an intent to prevent information uncovered in an appraisal proceeding from being used for further litigation, the *Andra* decision appears to have turned

---

[20] *Id.* at 188.

[21] *Id.* at 188–90.

[22] *Id.* at 189–90.

on a desire not to give the plaintiff a second bite at the apple on disclosure issues that she had failed to pursue in the first instance.[23]

Columbia also cites *In re Aristotle Corporation*,[24] which relied on *Andra*.[25] There, two stockholders perfected their appraisal rights and pursued appraisal proceedings after a short-form merger. Five months before the scheduled trial in the appraisal proceeding, the stockholders filed a complaint for breach of fiduciary duty in which they claimed that the controlling stockholder of Aristotle Corporation and the members of its board of directors breached their fiduciary duties by not disclosing all material facts in connection with the short-form merger. As a remedy, they sought quasi-appraisal damages equal to the difference between the fair value of their shares and the price of the merger—precisely the same remedy available in the appraisal proceeding. Despite filing a plenary action, the plaintiffs sought "to represent only themselves and not a class of other stockholders."[26] Again writing as a Vice Chancellor, Chief Justice Strine held that the plaintiffs lacked standing to pursue their breach of fiduciary duty claim:

---

[23] *Id.* ("She had the opportunity to serve her fellow stockholders in that manner [by pursuing disclosure claims pre-closing], but turned her back on it. Allowing her at this stage to press claims that do not involve injury to her would invite gamesmanship.").

[24] 2012 WL 70654 (Del. Ch. Jan. 10, 2012).

[25] Columbia introduced its arguments based on *Andra* and *Aristotle* for the first time in its reply. Rule 5.1 does not contemplate a reply, and I therefore granted the petitioners' motion to strike that filing. For the sake of completeness, this decision addresses *Andra* and *Aristotle* anyway.

[26] *Aristotle*, 2012 WL 70654, at *1.

> When a litigant files a new claim that, if proven, would not entitle it to any relief that it does not already have a right to receive, that litigant in my view has no proper standing. The petitioners here were not deprived personally of any right to dissent by any of the alleged disclosure inadequacies; they dissented based on what they knew already. To put it simply, the alleged disclosure inadequacies did not in any way impair the petitioners' ability to seek appraisal, yet that is the theory on which they ground their claim. Thus, they would have this court issue a merely advisory ruling in a genuine sense . . . .[27]

Like *Andra*, *Aristotle* does not appear designed to limit the use of information uncovered in an appraisal proceeding, much less the use of non-confidential information that becomes public. The decision instead appears designed to prevent a party from complicating an appraisal proceeding just before trial by adding a duplicative claim.

As its third source of authority, Columbia cites a transcript ruling by Chief Justice Strine in *Intel v. NVIDIA*.[28] That scenario, which then-Vice Chancellor Strine described as "so unusual as to be not likely to recur," involved the New York Attorney General serving interrogatories on NVIDIA to obtain its views regarding whether Intel had violated antitrust regulations, in connection with an investigation that NVIDIA itself had asked the New York Attorney General to conduct. On the facts presented, the Chief Justice denied the motion, reasoning that the information had been provided on an attorneys'-eyes-only basis to NVIDIA's outside counsel and therefore was not knowledge of NVIDIA for purposes of responding to the interrogatories.[29] Chief Justice Strine refused to permit

---

[27] *Id.* at \*3 (footnotes omitted).

[28] C.A. No. 4373-VCS (Del. Ch. Apr. 11, 2011) (TRANSCRIPT).

[29] *Id.* at 44–45, 52.

9

NVIDIA's senior officers to access the attorneys'-eyes-only discovery material so they could answer the interrogatories, explaining that this "would threaten Intel with precisely the competitive harm that [the court's protective] order was designed to limit."[30]

Because of its unique facts, the *Intel v. NVIDIA* ruling offers little guidance for the current case. The main factor that drove the ruling was the attorneys'-eyes-only production of commercially sensitive documents between competitors. The present motion does not involve an attorneys'-eyes-only production, commercially sensitive documents, or competitors. The ruling also did not involve an attempt to preserve the confidentiality of information found in judicial records that was not otherwise entitled to confidential treatment. To the contrary, Chief Justice Strine observed that the New York Attorney General had obtained the underlying documents from Intel and could see the filings NVIDIA had made in the litigation.[31] The *Intel* ruling thus does not help Columbia either.

So far, Columbia's position lacks a persuasive basis in Rule 5.1, the confidentiality order, or its cited precedent. This leaves its most general and at the same time most pointed argument, in which Columbia argues that the petitioners acted with an "improper purpose"[32] by loading up their filings with discovery material that they did not need to include, simply so they could seek to make that information public. Conceptually, this

---

[30] *Id.* at 47.

[31] *Id.* at 46.

[32] Dkt. 264 at 2.

argument is akin to an accusation that the petitioners violated Rule 11, under which an attorney who presents "pleading, motion, or other paper" to the court, "whether by signing, filing, submitting, or later advocating[,]" represents, among other things, that "it is not being presented for any improper purpose . . . ."[33] Assuming for the sake of argument that attaching truly irrelevant material to a motion could give rise to this type of violation, Columbia has not pointed to conduct that is either so extensive or so egregious as to support an inference that would warrant further investigation, such as the issuance of an order to show cause.

Columbia has not advanced persuasive grounds for maintaining confidential treatment for the Contested Materials. The motion for continued confidential treatment is denied. The Contested Materials will be made public.

---

[33] Ct. Ch. R. 11(b)(1).